## H. H. Lineaweaver & Co., Inc., v. McFadden, Appellant.

*Contract—Broker's commission—Principal and agent—Coal contract under government regulation.*

Where a railroad company purchases coal from a broker who has entered into a contract with the sales agent of a coal mining

company, who has bought its output, to buy from him such output for a fixed period at the rate at the mines and a specified additional broker's commissions, fixed at the time by a federal regulation, the commissions to be divided between the broker and the agent, and, during the running of the deliveries to the railroad, company, the government changes the regulation so as to fix an increased price at the mines, with the commissions not fixed in amount, to be paid out of such price, and thereafter the coal company pays the commissions to the agent for a time under the original contract and then refuses to deliver, except directly to the railroad company, the broker may recover his commissions from the sales agent on all the coal which the coal company was bound to deliver through him and the agent from the time it refused to deliver through them until the termination of the period fixed by the contract.

Argued January 18, 1923. Appeal, No. 204, Jan. T., 1923, by defendant, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1918, No. 3581, for plaintiff on case tried by the court without a jury, in suit of H. H. Lineaweaver & Co., Inc., v. W. H. McFadden. Before MOSCHZISKER, C. J., WALLING, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for commissions. Before STERN, J.

The opinion of the Supreme Court states the facts.

Judgment for plaintiff for $8,138.13 on trial by court without a jury. Defendant appealed.

*Error assigned,* inter alia, was judgment, quoting it.

*H. B. Gill,* with him *J. F. Shrader* and *J. R. Guckes,* for appellant.

*Chester N. Farr, Jr.,* with him *Charles E. Beury,* for appellee.

OPINION BY MR. JUSTICE SADLER, February 12, 1923:

Both plaintiff and defendant in the present case were jobbers in coal, the former having been so engaged for many years, and the latter being likewise employed,

largely on behalf of the Jackson Coal Company, in which his family was interested. In November of 1917, an agreement was made between the parties to this suit, by which the entire product of the mine of the company named was disposed of for a period extending to December 31, 1919, plaintiff contracting to secure a purchaser for the output, and it did resell to the Delaware, Lackawanna & Western Railroad. At the time, distribution of coal was subject to governmental control, and, under the regulations in force, the price of the producer was fixed at $2.45 at the mine, with an additonal allowance of fifteen cents for selling expenses. It was understood that the latter sum should be divided by the brokers, the plaintiff to receive eight and the defendant seven cents of this amount, making the cost to the railroad, $2.60. In all of the written agreements here involved, it was provided that the prices to be paid for the coal should be subject to any revisions made by the United States government.

In the following February a new policy was adopted by the federal authorities, which can be best explained by repeating, in part, the words of the circular then issued. "The United States Fuel Administration is satisfied that the only sound basis is to include in the government price a proper price for selling expense, and to provide for the compensation of the distributor in that way. It is therefore officially announced that on and after April 1, 1918, the limit of compensation of the jobber is removed, but that his compensation must come out of the government price at the mine, and may not be added to it. The mine prices will be republished prior to April 1, 1918, and at that time a proper allowance for selling expense will be included in the price named." To meet the additional burden thus imposed upon the operator, a new schedule was put in force, increasing the amount chargeable at the mine to $3.05, instead of $2.45, plus fifteen cents, or $2.60, theretofore named as the maximum, though the first sum was later reduced to $2.95.

After the promulgation of this order, the coal company, continued to bill its product to defendant, and the latter likewise to plaintiff, subject to the same commissions as before granted, with the expressed request, however, that an effort be made to collect the sum allowed from the ultimate purchaser, and this practice continued until June 26th, when the contract was abandoned, and direct negotiations were entered into by the producer with the railroad, to which deliveries were afterwards made without the intervention of either broker. The mining company insisted upon the payment to it of the maximum price fixed by the government, without deduction of any amount for selling cost, contending such course was permissible under the revised regulations of the fuel administration.

Plaintiff, claiming to have earned the compensation provided for by the original contract,—the defendant being the vendee of the coal company, and then the seller to Lineaweaver & Company, who in turn sold to the railroad,—brought suit for the commissions on the product mined and disposed of, at the rate fixed originally for its brokerage services. The first trial ended in a nonsuit, subsequently set aside, the second in a disagreement of the jury, and the third was heard by the court, by consent, under the Act of 1874, which entered judgment for the full amount of the claim, based on the tonnage produced and sold between June 26, 1918, and the date named for the termination of the sales agreement.

The first question raised on this appeal relates to the effect of the government order of February, 1918. Prior to that time a maximum brokerage fee was fixed, and all of the parties contracted with this in mind, the plaintiff and defendant arranging between themselves for the manner in which the allotted sum should be divided. The change in base price, considerably increased as it was, evidently contemplated that sellers of coal should, in the future, pay commissions from the charge permitted to be made. Though the contract was subject to

federal revision, yet the alteration actually directed must be considered in its entirety. When this is done, we find the express declaration that the compensation of the jobber shall thereafter be deducted from the price permitted to be charged at the mine. In 1917, when the agreements here involved were made, the allowance was $2.60, from which the selling cost was payable, though the fifteen cents fixed for the service was named as a separate item. Later, this was included in the maximum sum, which was for this purpose advanced. With the clear understanding appearing here, that the broker should receive a fixed amount for its services in securing a purchaser of all the coal of the company through the defendant, the product being first billed to the latter as a purchaser, the plaintiff carried out the obligation of the contract, and, for the loss of definite and fixed profits, it is entitled to recover from the one with whom the agreement was made: Stewart v. Turner, 72 Pa. Superior Ct. 235.

As said by the learned court below in its first conclusion of law, which we adopt, "Neither the United States Fuel Administration, nor any other governmental agency, made any rule, order or regulation at any time which prevented, or interfered with, the carrying out of the contract between the parties hereto at such prices as to enable the plaintiff to obtain the profit contemplated in the original contract."

The construction as to the effect of the change of price ordered accords with that adopted by the defendant until June 26th, when the coal company ceased deliveries through the parties to this proceeding. Though requesting that an effort be made to secure the commissions from the railroad, it allowed the deductions from the new fixed price until that time. And this practice was in conformity with the intents, purposes and directions of the fuel administrator, as appears by the evidence of his Pennsylvania representative.

It is further suggested in defense that it was the duty of the purchaser to see that sufficient cars were furnished to move the coal mined, and the failure to produce evidence that such were supplied prevents recovery. There is nothing in the record indicating a lack of performance of this obligation. Under the rules of the railroad administration, purchasers engaged in transportation,—as was the Delaware, Lackawanna & Western Railroad, buyer here,—were entitled to all cars necessary for the moving of materials essential to their operation, and no testimony indicates the coal company was ever embarrassed by a shortage. On June 26th it voluntarily ceased shipments, except under the new arrangement which it made directly with the railroad, without the intervention of the plaintiff and defendant.

The latter purchased directly and sold to the former, who was to receive a definite sum in compensation for reselling. Lineaweaver & Company performed the duty as agreed upon, and it is entitled to the commissions upon the tonnage mined from the one who contracted to pay. The fact that the coal company may have interpreted the orders of the government in such a way as to deprive McFadden of his just dues is no defense to the present action. The conclusion reached by the court below was correct, and should be sustained.

The judgment is affirmed.